and 185637 U.S.A. v. Lee Hope. Oral argument, not to exceed 10 minutes for each defendant and 20 minutes for the plaintiff. Mr. Poehler and Wharton, for the appellants. Mr. Poehler will be first when ready. Good morning. Good morning, Your Honors. May it please the Court, I'm Tyrone Poehler with the Western District of Tennessee Federal Defender's Office. I represent Mr. Bowen. I'd like to reserve two minutes for rebuttal. Very well. Having been I will turn the Court's attention to the issue that I raised by way of my 28-J letter that I filed regarding the Supreme Court's decision in Raheem. This is a Supreme Court decision that was decided on June 21, 2019, wherein the Court held that in prosecutions for violations of 18 U.S.C. 922G and 18 U.S.C. 924A2, the government has to prove beyond a reasonable doubt that a defendant knew his status as a prohibited person in addition to a defendant knowing his status. So wouldn't the analogous knowledge requirement in this case be that the government would have to prove that he knew that he possessed guns and he knew that he was an unlawful user of marijuana? I mean, that's the anomaly. Just how do you know what your activity is? You have knowledge of what you're doing. Not that it's illegal, right? Because that would just be the ignorance of the law. No, I believe in the Supreme Court's would mean that you would have to know that the regular and routine repeated use of marijuana would make you a prohibited person. When we look to that definition, it is difficult for anyone specifically with 922G3, which is the provision that's at play in this matter, to have any certainty what constitutes regular and repeated use according to the law without having a specific finding that you are a prohibited person and someone providing you with the knowledge of that status, unlike perhaps a convicted felon who is advised at the time that he is convicted of a felony. He's made aware that you're prohibited from possessing a firearm or ammunition, which provides him with that knowledge that he would need in order to prevent otherwise innocent conduct. I'm a little confused. Wouldn't it just be that he has to know that he engaged in, what is it, repeated conduct or regular conduct? What is the language? It's routine and regular. Wouldn't he have to know that it's routine and regular, not know that it would be adjudicated as routine and regular, but know that it's routine and regular? Wouldn't he have to know what a court would say? It's hard to imagine that when some court finally tries to apply Red Hive to this type of activity or this category under the statute, that they're going to ask the prosecutor to show that the he has to know it's how regular he was. Doesn't that make sense? I mean, I can understand your argument if your argument is that the person has to know that he was engaged in regular use of drugs, use of illegal drugs. My argument is that the person would have to know their status and the government would have to prove that knowledge. But what is the status we're talking about? Is the status of regular use, routine use, whatever it is, is that what they have to know or do they have to know what the statutory meaning of routine use is? It could be different. You could know that you routinely use something and not be familiar with the law about routine use. Would that be enough? I don't believe it would be enough, Your Honor. That would be kind of a strange reading of the statute, though, I would think. Maybe it's accurate, but then we get into plain error. How could it be plain error when we're talking about such an abstract and counterintuitive meaning of the statute? Well, Your Honor, I think the Supreme Court has spoken, and I believe they've clearly spoken with respect to immigration status. Whether you're subject to deportation is really kind of a different issue, isn't it? Well, Your Honor, in a close reading of Rahif, what the Supreme Court spoke to was 922G and all of the prohibited status contained in that statute, meaning that that statute, those prohibited statuses have to be knowledgeable and the government has to prove that knowledge. But what I'm asking you is, assuming that's true, you're still going to have to look and see what that means in the context of one of those other categories. And there's room for argument because you could say, using your very words, that it's just on its face impossible that he didn't know how regularly he used it. People know how regularly they use things. If you mean by routine use that, if you mean something more specific than that, it's a different interpretation. So under plain error, I don't know how you can be sure that the different interpretation is going to be the one that gets adopted. Your Honor, that is an issue that the government, again, has to present to the jury before he can even be determined a prohibited person. The government is required to produce evidence sufficient to the jury to establish that the use of the controlled substance or the illegal substance was routine and regular. It's an additional burden. I guess what I'm asking is why isn't it obvious in this context, unlike in the asylum context, that if you use some, if it is, the jury is told to find that he routinely used it, why isn't that enough to suggest that he knew that he was routinely using it? You could not be qualified, you could be disqualified or qualified to be deported and not know it, but it's hard to use drugs and not know that you're using them. You see what I'm saying? So it's different. I understand it's hard. If it's hard, then you lose under plain error. I mean, it's hard to know that you used drugs, but it's more difficult to establish what the routine and patterned use of drugs are, and that would be the burden for the government to establish before a jury. In this case, and I see I'm coming short on time, but in this particular case, the government offered, we didn't receive an instruction from the judge in the first place regarding the knowledge of the status. The government, in a clear review of the record, would indicate that there is no proof whatsoever regarding Mr. Bowen's knowledge of his status as a prohibited person that was deduced from the trial. With that being said, I think it's reversible error under any standard applied to these to the court to establish, in terms of the new trial, what the government burden is, as indicated in Rahi's and the Supreme Court's reference to what should happen to that case. Thank you. Thank you for the pronouncement. Thank you. Counsel, you'll have your two minutes. Good morning. Good morning. Your Honors, may it please the court, I'm attorney Alexander Warton, Warton Law Firm in Memphis, Tennessee, and I have the special privilege of representing Mr. Lee Hope in the mat before Your Honor. Your Honor is to stay under the case number 18-5637. At the outset, I would request, as well, two minutes for your call time on behalf of Mr. Hope. To answer Your Honor's question and with permission from the court, I would like to incorporate Mr. Payne's arguments in terms of the United States Supreme Court's decision, recent decision in the Leahy matter, into seeking relief for Mr. Hope. To answer Your Honor's question as to how would this look, essentially, at a trial, I think the decision sets forth that the person must know that they are a prohibited person. The fact that a person uses or is purported or alleged to use marijuana is one issue. The second issue would then be, have they done that regularly and routinely? Again, for the jury to ultimately decide if the government has proven that element beyond a reasonable doubt. But also, the prohibited person status, to your point, Your Honor, as it relates to But I think in this particular case, the person must know that they are in a prohibited status. Your Honor, the question about deportation. That's exactly what the statute says. I thought they had to know what the facts that put them in a prohibited status. You're speaking to 922-G3? The statute we're talking about. 922-G3, no. They have to know, number one, what the government has to prove that they regularly and routinely use a controlled substance, and that substance must be identified by the government at trial for what that is. In this particular case, it was marijuana. It's not the fact that they knew. I'm talking about the provision that says where the knowingly applies. That's in the receipt decision if we're talking about their prohibited status. They must know that they are prohibited from possessing. I'm not asking the question. Okay, I may not be responsive to you, Your Honor. I'm sorry about that. But essentially, when we talk about the use of marijuana under 922-G3, the issues that we raised in our brief go to the fact that the government's proof in this case, outside of what Rahif, the decision of Rahif from last Friday indicates, there was nothing presented by the United States government in a two-day trial after jury selection that would corroborate anything that Mr. Hope put on a Facebook account for a period more than one year leading up to the ultimate day of his arrest, May 27, 2017. An issue in this case, and this is not hyperbole by any stretch of the imagination, I think, that the record indicates this, we only heard from law enforcement who could speculate as to what certain things and postings meant, which in the trial, some of those postings, verbal postings on Facebook were references to rap songs. They could not testify. But you're not challenging the admissibility of the evidence, right? No, not challenging the admissibility of it, but the way that evidence was for the jury to sufficiently find and also for the court to overrule or deny motion for judgment of acquittal. But if it's admissible, so it's going to come in, there are pictures, the jury can decide at that point, right? I mean, there are questions about when were these pictures actually taken, correctly posted. Is this the defendant? Is it a real gun? Are these real drugs? What are we saying in the comments? You know, I'm quoting a rap song. It doesn't mean that I'm actually using drugs. That's correct. I understand that. Doesn't that just go to the weight of the evidence? You argue at trial, they argue at the prosecution argues at trial, jury comes up with a verdict. Right. But here's the issue with that. And I will get to one of the cases that was cited in the government report pretty shortly. The issue is not whether the jury can consider that. The evidence that was only presented to the jury was, were admissions, purported admissions, which were then admitted through Facebook of Mr. Hope as to certain activities that he engaged in. There was no question as to, on June 27, 2017, whether Mr. Hope possessed a firearm. That was not on the table. The dispute was whether the government, with sufficient and independent evidence, demonstrated outside of Mr. Hope's purported admissions to being a user of marijuana over the course of a 12, 14 month period of time, whether there was sufficient and independent evidence to corroborate or support his statements on Facebook. For instance, in the Farad decision that the government raised nothing, Mr. Paler raised no matter, Mr. Bowens in his brief. The difference in that case, Farad was different in that it was a 922G case in which a person was accused of being a felon in possession of a firearm. In the Farad case, unlike United States v. Lee Hope, the government presented proof through expert testimony of an officer who testified, I was able to identify this weapon. I've had 30 years of experience in identifying weapons. The weapons that Mr. Farad displayed on Facebook, similar to this case in the U.S. v. Hope, that is an actual firearm. I can recognize it because of certain markings. We don't have that in this case. The only thing that we have is on May 27, 2017, Mr. Hope was in possession of a firearm. What evidence did the defense put out there about Facebook? Did they contest that these were not, this was not in my account, this is not my account, or this isn't me, or these weren't drugs? What was the defense case on the Facebook issue? Well, there was no evidence put forth in the defendant's case, but through questioning of the government's own witnesses, we were able to confirm that they were able to confirm that they had no independent information to corroborate whether in fact these statements that Mr. Hope was making on Facebook were true. Why would the government have to have independent evidence to corroborate what your client has posted on Facebook? Why would they need that? Because what we're talking about, an issue of, similar to the Farad decision in the Pennell, or Pennell, I may be mispronouncing that, those issues relate to we cannot simply rely upon a person, although that is evidence. Are you talking about the confession cases? Is that what you're talking about? That's correct. Okay, well, we're not dealing with the Fifth Amendment, the confession cases. We're dealing with information that your client put on Facebook. I don't know how you compare that to a confession. A lot of confessions are court-courses situations. I think we have additional safeguards that require corroboration of statements made in those principles that apply to what your client posts on Facebook. Why wouldn't it? Respectfully, I believe that it does apply in the sense that that is a form of evidence, the court admissions before arrest. So there is a distinction between post-arrest statements and incurred arrests. If it qualifies as admissible evidence, it comes in, I can't see why it can't be accepted as your statement. It comes in, but it has to be independently verified by other information. Well, the issue is not just the fact of whether there was use of marijuana, and I see him approaching on a matter of time, if I can answer your honest question. The issue is not as to whether a statement was made on Facebook. The government also has to prove and demonstrate the regular and repeated use of substances. So we have five videos and or pictures over a 12 or 13 month period of time, and maybe six or seven postings where it was indicated that he was getting high, he was sober at some point, without any type of independent testimony. We're simply saying this person said that they... Okay, I mean you're saying that the evidence itself was insufficient or it was sufficient but it needed to be verified? No. Did you do a pulse? It's insufficient to sustain a conviction on that, beyond a reasonable doubt. Okay, we get away from the corroboration and verification, but the evidence itself, you could see was sufficient or not? To get to a jury? Yeah. No. It was not sufficient to get to a jury because no rational fact can say that the government demonstrated through Facebook postings, without any type of independent corroboration of time and place, for a jury to decide otherwise. It's admissible, but not necessarily sufficient to sustain a conviction, and we respectfully ask the court to reverse the call. Any further questions? All right. Thank you. Thank you. I'll allow you to look at the model. Thank you. Let's hear it from the government. May it please the court, Mark Eshaun representing the United States. The judgment of the district court should be affirmed because the district court did not err in denying the defendant's motion for judgment of the court, because there was sufficient proof of the defendant's regular and repeated drug use. I want to make sure, I guess, the standard in which the government must prove is stated. The government must prove the defendant engaged in regular and repeated use of a controlled substance during a period that reasonably covers the time a firearm was possessed. Again, we're focused on the regular and repeated use. In this particular case, first and foremost, the proof showed that at the time the defendant was arrested, there was a marijuana blunt that was recovered on the backseat in between both defendants. That blunt was also burned. In addition, the officer that initiated the arrest testified that he smelled an odor of burned marijuana. Then we have the several Facebook admissions and posts, posts specifically from Mr. Bowen, I'm trying to get high, high as hell, smoke this blunt, where I have a total of approximately 13 admissions that the defendant was in drug use. As it relates to Mr. Bowen, we have approximately six admissions that he was in drug use, words such as sober as hell, who got some weed. In fact, that post was actually made two days prior to when officers located the marijuana blunt inside of the defendant's vehicle. Of course, those type of statements being high, this court has ruled, basically admitting to being high on several different occasions is sufficient to prove regular and repeated drug use as stated in U.S. v. Gross. Counsel, I don't mean to interrupt your argument, but I hope you will allow a few minutes to address the number of firearms enhancement before you close. I can, I can. I didn't mean to do it out of order. That's fine. Let me do this as well. I will address the Rule 29J letter and the... Go ahead. However you want to do it. Well, just the governor requests that, being that this case was just handed down during the 21st request, if the court would like additional briefing for the court to be able to additionally brief that matter. But I would say this. In this case, it is a little different as it relates to the knowing element for drug, being a drug user. Of course, in the other 922G prohibited persons, you have convicted felon. You also have the illegal alien. In those instances, there is a, I'll say a third party or administrative agency that places that status upon the defendant. In this case, the defendant places the status upon himself as being a drug user. In addition, again, the defendant gives several omissions on Facebook, which obviously shows the defendant knows that he is a drug user because he omits to doing such. And... But the knowing requirement is not in 922. It's in 924, right? Correct. So it says knowing violation of these subsections of 922, which seems to me to be fairly broad. And so, and the Supreme Court says, well, you have to know that you're an alien or that you have the status. I mean, why aren't they right that you have to know that you're a rate order user of drugs It's a special status under the statute, right? So why wouldn't that, why wouldn't my analogy apply the same way? Well, in this case, I believe it does apply. But again, there's proof there that the defendant has knowledge, again, based on the omissions made. Again, I stated that there are other parties or agencies, like courts or administrative agencies, that makes the defendant a person, the defendant a prohibited person. In this case, the defendant makes himself a, the two defendants make themselves... But even to know that, I mean, it seems kind of vague to me. I mean, there's no vagueness challenge here, but I mean, how much use is enough? I know you struggled a little bit with jury instructions. What does it mean to be an unlawful user? I mean, the word rate order, when repeated, it's not in the statute. No one says it's unlawful user. That could be one time, right? But we've said, no, it's not one time. So what do you, what is that? How does the defendant know that? It's a case-by-case situation. I think it's fact-intensive. Whether you look at the frequency of the use or the interval time period of which the defendant uses. I'll say, in this case, I think it's very much sufficient where in the past six months, where you have 16 admissions and photographs and videos, in addition to the actual marijuana blunt that was recovered in the vehicle next to the defendants. In addressing the two-level enhancement for the number of firearms, first and foremost is the government's position that there was proof that the defendant, the government established by our hundreds of evidence, that Bowens possessed a SIG Sawyer 40-caliber pistol. That's the pistol that- For my purposes, I'd like you to assume that possession is established. My question is whether it's relevant conduct. It needs to be relevant conduct, right? It looks like it, but assuming he had it, I don't see how it's relevant conduct. It is relevant conduct. Of course, in order for, I guess, a court to determine whether it's relevant conduct, you look at three factors, the similarity of the offense, the regularity of the offense, and the time intervals between the offenses. Of course, the clear similarity is just that it's the same offense, right? That is correct. What else is similar? Correct. That's the only similarity. When there is, of course, lacking in one factor, the government must prove, have strong proof in the other factors. And it's not- How are the other factors supported? Specifically, the second, the regularity of the- You're just talking about one extra gun here, right? Well- Because the police were not relying on other guns. Well, we are relying on all of the guns in the proof that was presented in court. There were Facebook photographs which showed four instances of defendant possessing firearms in December of 2006. There were two instances- So you're not arguing that the 6-hour was relevant conduct? I'm arguing that it is relevant conduct. That makes the third firearm, which allows the court to increase defendant sentence based on the number of firearms where you're in that over three firearm provision. But you have to have that gun, the one in January, in order to get the enhancement? Yes. Yes. Okay. It seems a little odd to say and that is relevant conduct because some other things are relevant conduct too. To show the regularity, again, it's not only just that firearm. There was proof submitted, again, based on Facebook photographs that the defendant possessed firearms in December of 2016, in January of 2017. Not just that 6-hour, but another firearm in January of 2017. And then the firearms- What are the other ones? These are just other guns that were seen on the Facebook? Yes. There was no testimony as to the actual brand or make or model. But those guns, you're not adding them to the number to get over three, right? Correct. It was just the judge made the finding that there were, for that purpose of, just said that three. What about the third factor? You said there were three factors? Yes. The third factor involves the time period between the possession of the offenses. And, of course, the 6-hour was possessed in January of 2017. The instance case upon which the defendant was charged was in May. There's a four-month time period there. However, there were, again, going back to the photographs of the other firearms, it appears to be a little bit more regular than that as we have the four instances in December, two instances in January, and then the instance in May. I cite the United States v. Phillips case, which has a much longer, I guess, time period as it relates to intervals, where, in that case, a defendant was convicted of being convicted of possession of a firearm. And in August of 2002, the defendant was found to possess a firearm. The defendant was convicted in 2004, and then it was found that in 2006 the defendant also was in possession of a firearm, which is almost a six-year span. However, this court then still upheld that that was considered relevant conduct in this case. Here we have a much shorter time period, approximately five months' worth of possession of a firearm. Now, of course, I don't understand how this – it's a possession crime, but you agree that you have to show more than just that he possessed the guns. Correct. Right? So you have to link – somehow there has to be a link between the January gun and the ones that were found. Not a physical link, but some kind of course of conduct. I don't know what it is. So what – other than the fact that there are only four months between the incidents, what else – I mean, what else links them together? That the defendant is – the status of him being a – being a graded person, being that he is a drug user. So under this crime, which, I mean, frankly kind of – I mean, basically it's illegal to be a marijuana user and own a gun, right? Okay. So if you can show that there are any guns within the time period that you choose to show the person is a regular user of marijuana, that's – is that just a – that's a relevant gun? Or is that part of the offense because you just possessed that gun during that time period? That is a relevant firearm for the purpose of enhancement, and in fact the government could have chosen to indict the defendant and charge him. So you can just charge a different count in January. Hey, we found a gun in your apartment. As long as we can show you a regular user of marijuana at that time, you got another charge. Exactly, yeah. Yes. Wow. And that's – and this is – I think that's, again, I think the major issues that I have to present. If there are any other questions. Well, why – let me ask you this question. There was – I think counsel is correct that in the Farad case, there was more expert-type testimony that the government presented about Facebook and social media. Why wasn't that done in this case? In this case, it wasn't necessary. One, with the social media accounts, there were several other – cooperation, which is not needed, but there was several other cooperating evidence. For example, with the omissions made by the defendants, there were photographs uploaded actually showing what the defendant had admitted to. And again, we cannot forget that at the time that the defendant was arrested, that there was a marijuana blunt at their – inside of their vehicle. In addition, I guess, as it relates to, I guess, when the photographs were uploaded, again, circumstantial evidence, a jury can infer based on, again, the date that it was uploaded. But the issue is when those videos or photographs were actually taken. There was proof that was presented that when the defendant – both defendants were actually arrested on the day of their arrest, there was actually a video of the defendants wearing the very same clothes at the time that they were arrested. In addition, the very same firearms that were charged were also in that video. So the jury basically could infer that oftentimes when the defendants are using marijuana, they post a very similar – if not at the exact time, immediately thereafter. And so based on that, there is a sense of reliability, again, based on the cooperating evidence surrounding the omissions, surrounding the photographs, and surrounding the video. And so therefore, an expert is not needed in this particular instance. Any further questions? All right. Revolver. Thank you, Your Honor. Your Honor, may I address this issue regarding the Facebook posts and comments? While those Facebook posts and comments were admissible because the rules of evidence allowed them to come in, there was no evidence that supported – and you can check the record. There was no testimony from any witness where Mr. Bowen said, yes, this is my Facebook account. Yes, I posted these things. So we have admissible Facebook materials, but there is no one – no proof that establishes that Mr. Bowen actually posted these comments, that Mr. Bowen – Is there any proof to the contrary that he did not post them? Well, Your Honor, on cross-examination of the government's witnesses, all of the witnesses asked about these Facebook posts and comments admitted that they could not indicate whether Mr. Bowen did them himself. It was speculative as to whether – So it's his Facebook page, right? There are characteristics from Mr. Bowen that connected that Facebook account to him. However, there is nothing for Mr. Bowen's acknowledgement that this is my Facebook account. Isn't there a presumption that it's his Facebook page and the postings are there are his? I mean, at least it's presumed and you can rebut the presumption if you want, but isn't it? I'm not sure about – At least it's a reasonable inference, is it not? There may be a reasonable inference, but, Your Honor, Mr. Bowen has a constitutionally protected right not to put on any proof. The burden is always on the government in these situations. Well, he's not being compelled to testify. I think that's what the Fifth Amendment says. Well – I mean, this is something he did before he was even arrested, so I'm not sure that – Regarding the number of firearm enhancements, Your Honor, again, for the enhancement for the firearm in January to be applicable in this status, in this situation, again, we have this issue regarding Rahif that Mr. Bowen has to know his status at that time. All we know from the jury's verdict, if we can infer anything, that as of May 27, 2017, he was a prohibited person. Not on January of 2017 or 2018 or any time before that. If no one else knows his status, then how are we to speculate that Mr. Bowen is in this status? I think we understand, Your Honor. Any further questions? Mr. Ward? Yes. Thank you, Your Honor. To address the arguments made by Mr. Young regarding the Facebook post and the decisions of this court, and of course now requiring corroboration of Facebook posts when they're admissions, the point that I'm making, Your Honor, is not related to the admissibility of said evidence. The point that I'm making is that the sufficiency of that evidence when presented to the jury, without any other proof to show when, where, who was posting these or maybe some other— The only reason that's good is because they can look at it and they can at least identify who the people were, apart from who posted it. Well, that's a— Then they look at it like the people that are right before the jury. I mean, the jury can—that's some evidence, isn't it? That is some evidence, but that was not all the evidence that was produced. Mr. Young referenced also postings. The postings are simply word captures. It's not a picture with you typing out the words. So somebody might have been pretending to be that person. That's a very good possibility, Your Honor. However, and it also could have been in reference to, as introduced or listed through cross-examination of the government's witnesses, rap lyrics or lyrics of songs. It could have been that. And so while the jury is allowed to make a reasonable inference, Your Honor, to the Your Honor's original question, is there a question of sufficiency? Yes, there is a question of sufficiency as to whether the government has demonstrated regular and repeated use when all we have over, out of 15 or 16 pages worth of Facebook materials, as to Mr. Hope, we have five or six videos. We don't know the circumstances under which those were taken or what was being allegedly smoked in those videos, as well as postings over a 12- to 14-month period of time. We don't know when those— If you just got a typed letter from someone and it had a written address on it, that would be admissible as evidence for some purposes. But you could always argue that that person didn't really send the letter. That's true. But you can't just say because later we look at it on appeal and say, well, it was typed, so it might have come from someone else. I mean, that's something that has to be argued to the jury, isn't it? And it was, Your Honor. Admissibility is not the question here against sufficiency. And respectfully, if someone sent me a letter, if I'm a converted proof as to every single element of where that letter came from is beyond a reasonable doubt, then I have to prove that beyond a reasonable doubt. My concern is that we're diluting that when it comes to an issue of a person, regular and repeated user, as Your Honor pointed out, that is extremely, I guess, circumstantial in a sense. So we respectfully, again, request that the court reverse the decision of the trial court in its denial of the motion for judgment for acquittal, as well as being permissioned to incorporate the arguments raised under the United States v. Leahy decision. And similar to Mr. Young, we would, if necessary, be willing to submit additional post-hearing briefs on the Leahy decision and how that affects this decision. Thank you very much, Your Honor.